Brady L. Rasmussen, USB #9619
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
BRasmussen@parsonsbehle.com

Eric S. Dwoskin (*pro hac vice*)
**DWOSKIN WASDIN LLP**
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tel.: (561) 849-8060
edwoskin@dwowas.com

Norman E. Siegel (*pro hac vice* forthcoming)
J. Austin Moore (*pro hac vice* forthcoming)
Kasey Youngentob (*pro hac vice* forthcoming)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
(816) 714-7100 (tel.)
siegel@stuevesiegel.com
moore@stuevesiegel.com
youngentob@stuevesiegel.com

*Attorneys for Plaintiff and the Proposed Class*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MIGUEL CORDERO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SPORTSMAN'S WAREHOUSE, INC., and SPORTSMAN'S WAREHOUSE HOLDINGS, INC.,<br><br>Defendants. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**<br><br>Case No. 2:24-cv-575 |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................ 2

    A.  Sportsman's installed malicious tracking technology on its website to
       increase sales. ................................................................................................. 2

    b.  AddShoppers uses the data collected from Sportsman's website to
       improve its detailed consumer profiles. ........................................................ 2

    c.  Cordero's precise browsing activities were captured by AddShoppers
       when he visited Sportsman's website and associated with his personal
       information. ..................................................................................................... 3

III. LEGAL STANDARD ............................................................................................ 3

IV. ARGUMENT .......................................................................................................... 4

    A.  Cordero has Article III standing. ................................................................... 4

       1.  Cordero suffered a concrete privacy injury. ........................................... 4

       2.  Cordero's privacy injury is fairly traceable to Sportsman's. .................. 8

    b.  Cordero adequately states a claim for wiretapping under CIPA. .................. 9

       1.  Sportsman's installed tracking code to capture the contents of
          Cordero's communications. ...................................................................... 9

       2.  AddShoppers intercepted Cordero's communications in transit. ............ 10

       3.  Cordero did not consent to AddShoppers collecting his
          communications. ...................................................................................... 12

    c.  Cordero adequately alleges a pen register or trap and trace device on its
       website in violation of CIPA. ........................................................................ 15

    d.  The court should not stay the case based on cases against AddShoppers. ...... 17

V.  CONCLUSION ...................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ade v. Viki, Inc.*,
   2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ...................................................................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 4

*Augustine v. Lenovo (U.S.), Inc.*,
   2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) ........................................................................ 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 4

*Braun v. Philadelphia Inquirer, LLC*,
   2023 WL 7544160, (E.D. Pa. Nov. 13, 2023) ..................................................................... 10

*Byars v. Sterling Jewelers, Inc.*,
   2023 WL 2996686 (N.D. Cal. April 5, 2023) ....................................................................... 8

*Calhoun v. Google, LLC*,
   113 F.4th 1141 (9th Cir. 2024) ........................................................................................... 15

*Cousin v. Sharp Healthcare*,
   681 F. Supp. 3d 1117 (S.D. Cal. 2023) ............................................................................... 11

*Doe v. Woodard*,
   912 F.3d 1278 (10th Cir. 2019) ........................................................................................... 4

*Fed. Trade Comm'n v. Zurixx, LLC*,
   2020 WL 6898341 (D. Utah Nov. 24, 2020) ....................................................................... 18

*Garcia v. Asana, Inc.*,
   2024 Cal. Super. LEXIS 32846 (Sup. Ct. Cal.) .................................................................. 16

*Greenley v. Kochava, Inc.*,
   684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ............................................................... 15, 16

*Hazel v. Prudential Fin., Inc.*,
   2023 WL 3933073 (N.D. Cal. June 9, 2023) ........................................................................ 9

*Heerde v. Learfield Commc'ns, LLC*,
   2024 WL 3573874 (C.D. Cal. 2024) ................................................................................... 11

*In re Facebook, Inc. Internet Tracking Litig. ("Facebook Tracking")*,
   956 F.3d 589 (9th Cir. 2020) .................................................................................... 5, 6, 10

4864-1977-8550.v1

*In re Meta Pixel Healthcare Litig.*,
   647 F.Supp.3d 778 (N.D. Cal. 2022) ....................................................... 10

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
   934 F.3d 316 (3d Cir. 2019)..................................................................... 7

*Landis v. N. Am. Co.*,
   57 S. Ct. 163 (1936)........................................................................ 17, 18

*Licea v. American Eagle Outfitters*, *Inc.*,
   659 F. Supp. 3d 1072 (C.D. Cal. 2023) ................................................. 11

*Lightoller v. Jetblue Airways Corp.*,
   2023 WL 3963823 (S.D. Cal. June 12, 2023)........................................... 8

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021).................................................. 11

*McClung v. AddShopper*, *Inc.*,
   2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .................................... passim

*Menchacha-Estrada v. Synchrony Bank*,
   2017 WL 4990561 (D. Utah Oct. 30, 2017) ......................................... 17

*Moody v. C2 Educ. Sys. Inc.*,
   2024 WL 3561367 (C.D. Cal. July 25, 2024)................................... 15, 16

*Morrison v. YTB Int'l, Inc.*,
   2010 WL 1931127 (S.D. Ill. May 13, 2010)......................................... 18

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................. 12

*Pueblo of Jemez v. United States*,
   790 F.3d 1143 (10th Cir. 2015) ............................................................. 4

*Racher v. Westlake Nursing Home Ltd. P'ship*,
   871 F.3d 1152 (10th Cir. 2017) ........................................................... 16

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)................................... 9, 11

*Ridge at Red Hawk*, *LLC v. Schneider*,
   493 F.3d 1174 (10th Cir. 2007) ............................................................. 4

*Salazar v. National Basketball Ass'n*,
   --- F.4th ---, 2024 WL 4487971 (2d Cir. Oct. 15, 2024) ................. 5, 6, 7

4864-1977-8550.v1

*Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, *New Mexico*,
   993 F.3d 802 (10th Cir. 2021) ................................................................................. 8

*Seale v. Peacock*,
   32 F.4th 1011 (10th Cir. 2022) ........................................................................... 4, 5

*Sellers v. Bleacher Rep., Inc.*,
   2023 WL 4850180 (N.D. Cal. July 28, 2023) ...................................................... 12

*Shah v. Fandom, Inc.*,
   --- F. Supp. 3d ---, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ......................... 15

*Smith v. YETI Coolers, LLC*,
   2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ...................................................... 12

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................................... 4

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................... 5

*Valenzuela v. Nationwide Mutual Ins. Co.*,
   2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) ...................................................... 9

*Weatherspoon v. Miller*,
   2011 WL 1485935 (D. Colo. Apr. 19, 2011) ...................................................... 18

## **Statutes**

28 U.S.C. § 2072 .......................................................................................................... 21

Cal. Penal Code § 631 ................................................................................................... 8

Cal. Penal Code § 638.51 ................................................................................. 8, 20, 21, 22

Plaintiff Miguel Cordero opposes Defendants Sportsman's Warehouse, Inc. and Sportsman's Warehouse Holdings, Inc.'s ("Sportsman's") Motion to Dismiss Plaintiff's Complaint (ECF 24).

## I.    INTRODUCTION

This case challenges a covert surveillance scheme that enables retailers to track, collect, and monetize consumers' private browsing activities without their knowledge or consent. Through its partnership with AddShoppers, Sportsman's installed hidden tracking technology on its website that intercepts consumers' communications in real-time, monitoring their every webpage view. This tracking allows AddShoppers to build detailed profiles of consumers' interests and behaviors, which it then exploits to target them with advertising across the internet.

This exact scheme was recently examined in *McClung v. AddShopper*, *Inc.*, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024), where the court rejected arguments identical to those Sportsman's raises here. The court held that secretly capturing and sharing website visitors' communications states a claim under the California Invasion of Privacy Act ("CIPA").

Sportsman's motion rehashes arguments that courts have consistently rejected when examining comparable tracking technology. It wrongly claims Cordero lacks standing despite alleging a concrete invasion of privacy. It mischaracterizes the technology to argue it does not capture the content of communications "in transit." And it asserts Cordero somehow consented to surveillance that began before he even had the opportunity to view any privacy policy. Even if he had seen the privacy policy, it fails to adequately disclose the tracking scheme. The Court should deny the motion in its entirety.

## II.     FACTUAL BACKGROUND

### A.     Sportsman's installed malicious tracking technology on its website to increase sales.

To boost sales among website visitors—especially those with whom it had no prior relationship—Sportsman's turned to AddShoppers' marketing program known as "SafeOpt." Compl., ¶¶ 11, 13. This program promised to leverage AddShoppers' network of millions of shoppers to "directly advertise to [website visitors] even where the [visitor] leaves a website without affirmatively providing any personal information." *Id*. ¶ 23.

But using SafeOpt required Sportsman's to install AddShoppers' "malicious, third-party tracking cookies" on its website. *Id*. ¶ 19. These hidden cookies enable AddShoppers to monitor consumers' detailed browsing activities on Sportsman's website in real time. *Id*. ¶¶ 20, 23. When a consumer browses the retailer's site, a tracking cookie assigns a unique identifier to that person. *Id*. ¶ 22. This cookie remains concealed and continuously transmits information to AddShoppers. *Id*. AddShoppers then links this unique identifier with the personal information it already maintains in the network database. *Id*. By combining this browsing data with unique identifiers, AddShoppers can recognize website visitors and target them with personalized advertising. *Id*. ¶ 23.

### B.     AddShoppers uses the data collected from Sportsman's website to improve its detailed consumer profiles.

AddShoppers requires Sportsman's to grant a limited, transferable license to its user data as a condition for participating in the SafeOpt marketing program. *Id*. ¶ 13-14. This license allows AddShoppers to "exploit [the user data] for any lawful purpose without any duty of accounting or compensation." *Id*. ¶ 14. With this license, AddShoppers secretly collects consumers' detailed browsing data from Sportsman's website. *Id*. ¶ 15. It then pools this data to create detailed dossiers on these individuals. By adding the information collected from Sportsman's website to its existing

database, AddShoppers enhances the unique profiles it maintains on consumers. *Id*. The comprehensive profiles allow AddShoppers to more effectively target consumers with personalized advertising based on their browsing activity. *Id*.

### C. Cordero's precise browsing activities were captured by AddShoppers when he visited Sportsman's website and associated with his personal information.

Cordero visited Sportsmans.com on March 7, 2024, to browse Sportsman's online inventory. *Id*. ¶ 32. He did not agree to the Sportsman's privacy policy nor provide any personal information (such as an email) to Sportsman's. *Id*. ¶¶ 32-34. But because Sportsman's installed AddShoppers' code on its website, AddShoppers was able to surreptitiously capture Cordero's communications and interactions with the site during his visit. *Id*. This data was then aggregated by AddShoppers, enabling it to build a detailed profile of Cordero and target him with advertising based on insights into his online interests and internet use. *Id*. ¶18.

"Plaintiff Cordero had his [personally identifiable information] PII collected by AddShoppers and [his] online internet browsing monitored and tracked by AddShoppers without [his] consent." *Id*. ¶ 34. And his "information has independent value, which is recognized by AddShoppers and members of the Data Co-Op who agree to collect and trade it for their personal gain. Plaintiff and class members are harmed every time their PII is used or shared in a manner to which they did not consent, particularly when it is used to solicit them for marketing and advertising purposes." *Id*.

Accordingly, Cordero brings two counts of violations of CIPA: (1) Cal. Penal Code § 631; and (2) Cal. Penal Code § 638.51.

## III.   LEGAL STANDARD

Defendants (collectively "Sportsman's") move to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction

takes one of two forms: a facial or factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id*. Here, Sportsman's has launched a facial attack on the sufficiency of Plaintiff's allegations. In reviewing a facial challenge, a district court must accept the allegations in the complaint as true. *Id*.

In considering a motion to dismiss under Rule 12(b)(6), the inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Woodard*, 912 F.3d 1278, 1299 (10th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. ARGUMENT

### A. Cordero has Article III standing.

To establish Article III standing, a plaintiff must show (1) an injury (2) that is traceable to defendant's conduct (3) that a court can redress. *Seale v. Peacock*, 32 F.4th 1011, 1020 (10th Cir. 2022). *See also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Sportsman's challenges the concreteness of Cordero's privacy injury and, in passing, contends any injury is not traceable to its conduct. Both arguments lack merit.

#### 1. Cordero suffered a concrete privacy injury.

Cordero suffered a concrete privacy injury when Sportsman's partnered with AddShoppers to collect his detailed browsing activities. This intangible harm is concrete because "it 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Seale*, 32 F.4th at 1020. In *TransUnion*, the Supreme Court

recognized concrete harm is not limited to physical or monetary damages; "various intangible harms can also be concrete," including "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (collecting cases). Following *TransUnion*, the Tenth Circuit applied this standard to a federal wiretap statute. *Seale*, 32 F.4th at 1020. The court held that because the statute "provides recourse for invasions of privacy in the realm of electronic communications," the harm is "closely connected to the harms protected by traditional privacy claims where the unauthorized intrusion is itself actionable." *Id.* at 1021. The plaintiff therefore had Article III standing to pursue the wiretap claims.

The Tenth Circuit's decision relied on a Ninth Circuit decision which considered similar tracking activity to here: *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589 (9th Cir. 2020). There, the Ninth Circuit held that the plaintiffs "adequately alleged privacy harms" to support an injury for their CIPA claims. *Facebook Tracking*, 956 F.3d at 598. The Court noted that the "California legislature intended to protect historical privacy rights when it passed CIPA." *Id.* (cleaned up). Because the "statutory provision codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.* (cleaned up). As in *Facebook Tracking*, Cordero has "adequately alleged that [AddShoppers'] tracking and collection practice would cause harm or a material risk of harm to their interest in controlling their personal information." *Id.* at 599.

Likewise, the Second Circuit recently held that a plaintiff has standing to sue a website operator where it installs third-party tracking code which collected information about the videos he watched on the website. *See Salazar v. National Basketball Ass'n*, --- F.4th ---, 2024 WL 4487971, at *1-2, *5-7 (2d Cir. Oct. 15, 2024). This case involves the same technology—tracking

pixels—resulting in the same concrete harm: the unauthorized disclosure of personal browsing information.

Indeed, the Second Circuit explained the technical process as follows:

> The code most relevant to this case is a "tracking pixel"—a piece of code embedded on a website someone visits. As its name suggests, a tracking pixel tracks users as they navigate the website, reporting back to the pixel's owner. The information tracked depends on the tracking pixel's configuration.
>
> Here, Salazar alleges that Meta owns a tracking pixel, which we call the "Facebook Pixel." The NBA has installed the Facebook Pixel on NBA.com. Meta coded that pixel to collect and send to it (1) the title of the NBA.com video a user watched, (2) that video's URL, and (3) the user's "Facebook ID" (FID)—a number unique to each individual Facebook account. *Id.* at 15. We call this disclosed information "personal viewing information."
>
> By possessing the video title and URL of watched videos associated with a given FID, Meta can link a given Facebook profile to those watched videos. And with that information, Meta can send a user targeted advertisements. The NBA receives financial remuneration from this arrangement.

*Id.* at *2-3.

Here, the wiretapping scheme operates using the same technical process. Sportsman's and other retailers install AddShoppers tracking code on their websites. Compl., ¶ 22, 32. The code collects the precise webpages a consumer views and their unique user ID. *Id.* ¶ 19, 22-24. And by possessing the precise webpages associated with a given user ID, AddShoppers can link those webpages to a consumer's profile and use that information to send targeted advertisements. *Id.* ¶¶ 3, 15, 18-19, 25-26. Sportsman's receives financial remuneration from this arrangement through sales derived from the (unconsented) targeted advertising.

And the injury stemming from the unauthorized disclosure of personal browsing history through this tracking technology "is closely related to at least one common-law analog traditionally recognized as providing a basis for a lawsuit in American courts: public disclosure of private facts." *Salazar*, 2024 WL 4487971, at *5. Cordero's "core allegation is that [his] personally

identifiable information was exposed to an unauthorized third party." *Id*. at *7. Unlike even a data breach, Cordero does not "just allege that his data was *exposed* to a third party; rather, [he] asserts that it was *disclosed* as a result of an arrangement between [Sportsman's] and [AddShoppers] pursuant to which [Sportsman's] deliberately uses the [AddShoppers tracking code]." *Id*. This "alleged harm is closely related to the public disclosure of private facts analog." *Id*. The Court should therefore have "no trouble" concluding that the unauthorized disclosure of Plaintiff's private browsing history is sufficient to confer standing. *Id*. After all, every Circuit to consider this technology has found an adequately concrete injury. *Id*.; *see also In re: Google Inc. Cookie Placement Consumer Priv. Litig*., 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization. Privacy torts have become 'well-ensconced in the fabric of American law.'").

Indeed, Cordero alleges the existence of an injury-in-fact because Sportsman's enabled AddShoppers' misappropriation of his private browsing history across a network of retailers. Compl., ¶¶ 3, 12, 15, 19-24, 32. And because the wiretapping scheme relies on the participation of retailers like Sportsman's, California law treats them as principals to the act. Thus, Sportsman's knowing participation as a wiretapper "is enough to confer standing for a victim of the scheme to sue [it] in federal court." *McClung*, 2024 WL 189006, at *2.

Yet Sportsman's tries to downplay the privacy harm by misrepresenting how the wiretapping scheme operates and the information it captures. For starters, it argues Cordero lacks standing because he did not provide personal information to the website. Mot. at 6. But that is the point—his information is collected without his knowledge and consent. As *McClung* explains, "[t]he whole idea of AddShoppers' scheme is to tie browsing activity on one site with personal

information disclosed on another site, obviating the need for retailers to do it themselves." *McClung*, 2024 WL 189006, at *2 n.1. That is, the tracking code allows AddShoppers to associate a consumer's detailed browsing activity with their personal information, creating a privacy violation precisely *because* they do not directly provide any personal information.

Sportsman's also suggests Cordero only alleges the tracking code "mere[ly] captured when he last visited the website." Mot. at 6. This is wrong. Cordero asserts that AddShoppers' tracking code automatically collects detailed browsing data, including the exact webpages viewed. Compl., ¶ 23 ("AddShoppers tracks the user's activity on the website, including the user's detailed referrer Uniform Resource Locator ('URL').").

The cases relied on by Sportsman's cases do not implicate the same privacy harm and were expressly considered and rejected in *McClung*. Indeed, those cases involve situations "where the plaintiffs' browsing activity was tracked but never tied to their personal information." *McClung*, 2024 WL 189006, at *2 n.1 (citing *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *2 (N.D. Cal. April 5, 2023) and *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *1, *4–5 (S.D. Cal. June 12, 2023)). But those "cases do not stand for the proposition that a website only causes a privacy injury where it collects the personal information *itself*." *Id*. (emphasis in original).

### 2.    Cordero's privacy injury is fairly traceable to Sportsman's.

At the motion to dismiss stage, Cordero can satisfy the "fairly traceable" requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a "but for" cause of his injury. *See Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021). Here, Sportsman's installation of AddShoppers' tracking technology on the website, which was used to secretly capture Cordero's browsing activity, is the but-for cause of Cordero's privacy injury. Thus, Cordero's injury is fairly traceable to Sportsman's conduct.

### B.     Cordero adequately states a claim for wiretapping under CIPA.

Cordero adequately alleges AddShoppers intercepted the contents of his communications in transit, without consent, in violation of CIPA.  *See McClung*, 2024 WL 189006, at *3. And Sportsman's aided and abetted this violation by installing AddShoppers' wiretaps on sportsmans.com.[1] *Id*. Sportsman's takes aim at three of the elements of the claim: First, it argues the tracking code it installed on the website does not capture the content of communications. Second, Sportsman's contends the tracking code does not capture information while it is in transit. And finally, it asserts Cordero ostensibly consented to the tracking. None hits the mark.

### 1.     Sportsman's installed tracking code to capture the contents of Cordero's communications.

Sportsman's installed AddShoppers tracking code which collected the content of Cordero's communications with Sportsman's website. Specifically, the code is designed to intercept a person's electronic conversation with a website including the precise webpages they visit ("detailed referrer Uniform Resource Locator"). Although *McClung* is the only court to consider whether this *precise* code collects the content of a communication (concluding it does), *see McClung*, 2024 WL 189006, at *3, many courts have considered whether Facebook's substantially

---

[1] *McClung* was not unique in holding this conduct violates California's wiretapping law. *See, e.g.*, *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) (plaintiff adequately stated a claim against both the website operator and third party wiretapper); *Valenzuela v. Nationwide Mutual Ins. Co*., 2023 WL 5266033, at *6 (C.D. Cal. Aug. 14, 2023) ("Here, Valenzuela alleged that Nationwide hired Akamai specifically to intercept messages and use them for Nationwide's financial gain. Further, she alleged that Nationwide facilitated Akamai embedding Akamai's code into Nationwide's website. These are plausible allegations that Nationwide 'aided,' 'permitted,' or 'caused' Akamai's violations, which would lead to Nationwide itself being liable" under CIPA.") (cleaned up); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing."); *Augustine v. Lenovo (U.S.), Inc*., 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023) (denying motion to dismiss a CIPA claim where "Plaintiff alleges in the amended complaint that Quantum played an active role in recording including using the data for its own business purposes.").

similar code collects the content of communication and have all reached the same conclusion, finding it intercepts detailed user interactions with websites. *See In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 795-96 (N.D. Cal. 2022); *Braun v. Philadelphia Inquirer*, *LLC*, 2023 WL 7544160, at *4 (E.D. Pa. Nov. 13, 2023) (collecting cases). The same conclusion is warranted here.

### 2.     AddShoppers intercepted Cordero's communications in transit.

Cordero "sufficiently allege[s] that the communications were intercepted "in transit" within the meaning of § 631(a)." *McClung*, 2024 WL 189006, at *3. He alleges "[c]ompanies that join the Co-Op agree to install AddShoppers' code on their website. When an internet user creates an account or makes a purchase with the business, a third-party tracking cookie is created that includes a unique value AddShoppers associates with that user. The cookie is hidden on the user's browser and automatically send information to AddShoppers' SafeOpt domain 'shop.pe.' AddShoppers then associates that unique value with the personal information the user provided to the company[.]" Compl. ¶ 22. Afterward, anytime a "user lands on another website in the SafeOpt network, the cookie values 'sync' and AddShoppers tracks the user's activity on the website, including the user's detailed referrer Uniform Resource Locator (URL)." *Id*. ¶ 23. As AddShoppers acknowledges, this transmission happens in "real-time." *Id*. ¶ 25 (quoting AddShoppers' deleted blog post). Simply put, Cordero "makes specific factual allegations describing how AddShoppers' cookies intercept the information in real time, and it points to statements allegedly made by AddShoppers about real time transmission." *McClung*, 2024 WL 189006, at *3.

Still, Sportsman's contends the "in transit" requirement "prevents claims of interception when communications are in electronic storage." Mot. at 9. True. But Cordero's communications with the website were not collected out of electronic storage. As many courts have held, cookie-based tracking technology satisfies CIPA's "in transit" requirement because it duplicates communications to the website in real time without the user's knowledge. *See*, *e.g.*, *Facebook*

*Tracking*, 956 F.3d at 589 (analyzing placing cookies on user's browser; "simultaneous, unknown duplication and communication . . . do[es] not exempt a defendant from liability … Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion"). *See also Heerde v. Learfield Commc'ns, LLC*, --- F. Supp. 3d ---, 2024 WL 3573874, at *8 (C.D. Cal. July 19, 2024) (contents sent "in parallel to the tracking entities. … Therefore, … their communications were intercepted in transit."); *Revitch*, 2019 WL 5485330, at *2 ("Even if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device."); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130-31 (S.D. Cal. 2023) ("Plaintiffs plead that communications were intercepted in transit sufficient to survive dismissal").

Sportsman's cases involve different technology and thus do not apply here. Mot. at 9-10. In *Mastel*, the plaintiff alleged the defendant "accessed the Pasteboard on his iPhone each time he opened the application[.]" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1132-33 (E.D. Cal. 2021). In *Licea*, the plaintiff alleged his messages with a chat box were collected but only made "[b]are allegations of recording and creating transcripts." *Licea v. American Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023). As a result, the capture may have occurred "after receipt of the message in Defendant's inbox." *Id*.

Sportsman's focus on the "automatic" transmission only undermines its arguments about whether Cordero's communications were captured while "in transit." Mot. at 9-10. Because this tracking technology operates instantly upon a consumer's visit to the website, there is no delay between the consumer's interaction with the website and the capture of their communications. This bolsters rather than diminishes Plaintiff's facts supporting an "in transit" interception.

### 3.   Cordero did not consent to AddShoppers collecting his communications.

Cordero adequately alleges he did not consent to being wiretapped. Sportsman's arguments to the contrary are premature: "[T]he issue of consent is not suitable for a decision on a motion to dismiss." *Ade v. Viki*, *Inc.*, 2024 WL 1880153, at *4 (N.D. Cal. Mar. 28, 2024) (analyzing consent to sharing information on a website under a video privacy statute). In any event, its arguments also fail on the merits for three reasons: (1) Cordero's communication were captured before he could ostensibly consent; (2) Cordero did not manifest assent to Sportsman's privacy policy; and (3) Sportsman's privacy policy does not adequately disclose the conduct. Each is taken turn.

### a.   Cordero's communications were captured before he could ostensibly consent.

Cordero alleges "the cookies that AddShoppers installs syncs with the user's device the moment that they access the website—thus, by the time the user even sees the cookie banner, the initial visit has already been tracked and linked to AddShoppers's dossier of browsing activity and person information." *McClung*, 2024 WL 189006, at *3.

### b.   Cordero did not manifest assent to Sportsman's privacy policy.

Cordero "alleges [he] never clicked the 'Accept' button on the cookie banner. Thus, it cannot be said that [Cordero] 'took an action that unambiguously manifested their assent to be bound by the terms and conditions' of the privacy policies." *McClung*, 2024 WL 189006, at *3; *see also Smith v. YETI Coolers*, *LLC*, 2024 WL 4539578, at *3–4 (N.D. Cal. Oct. 21, 2024) (holding a defendant's pop-up banner did not adequately create consent); *Sellers v. Bleacher Rep.*, *Inc.*, 2023 WL 4850180, at *7 (N.D. Cal. July 28, 2023) (plaintiff not bound by pop-up banner because it "did not prevent the user from accessing the site" and "Plaintiff was not required to affirmatively acknowledge the agreement in any way"); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("where a website makes its terms of use available via a

conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.").

Nor does the cookie banner alert inform users that cookies are being used to intercept their communications; in fact, it misleads them. Rather than disclose any intent to engage in such interception, the banner states that cookies are used "to provide a better shopping experience." Mot. at 11. This language creates a false sense of security for a reasonable consumer who might be concerned about privacy risks, as it suggests harmless, service-oriented purposes for the cookies. It certainly does not prompt users to investigate further or seek out additional disclosures relating to wiretapping, interception of communications, or targeted advertising.

> **c.      Sportsman's privacy policy does not adequately disclose the wiretap.**

Even if Sportsman's could establish mutual assent at this stage (it cannot), Sportsman's Privacy Policy does not adequately disclose to a reasonable user that their communications are captured in real time by an unknown third-party advertising company with whom they have no relationship. Instead, the Privacy Policy affirmatively obscures this practice, and contains false statements about the true scope of Sportsman's tracking activities.

For instance, the Privacy Policy only notes "there 'are times when we collect information from you through our Website and Online Platforms.'" Mot. at 11 (quoting Privacy Policy). However, Sportsman's omits the next qualifying sentence, which clarifies that collection occurs "when you register to post comments, reviews, pictures, or other content on the Sportsman's Warehouse Website or Online Platforms." ECF 24-1, Ex. 2 at 21. Therefore, outside of "register[ing] to post comments, reviews, pictures, or other content," a reasonable user reading the

Privacy Policy would have no reason to believe that any information is being collected from them—much less that their communications are being actively intercepted in real time by a marketing company seeking to build a profile for targeted advertising.

Further down in the policy, Sportsman's lists five examples of "personal information" but omits any reference to intercepting communications or collecting users' browsing history. *See id*. Likewise, in its section on "Usage Information"—a term that obscures the personal nature of the data—Sportsman's disclosure on "Referrers" fails to inform users that it shares their browsing history with third-party marketing companies that can be used to personally identify them. *Id*. at 22. These disclosures also mislead users about the handling of "Usage Information" by falsely claiming that "referrer" information is aggregated and disclosed to content partner websites. In reality, this referrer information is secretly captured by AddShoppers, an advertising partner that does not show any content on Sportsman's website, in a manner that is used to personally identify Plaintiff and other website users (*i.e.*, not just aggregated data). *Id*. at 23.

Sportsman's further obscures the lack of confidentiality in its data practices by falsely asserting: "We treat any personal or usage information within or obtained from a cookie with the same confidentiality as the information we obtain when you purchase something through our Website." *Id*. Again, in reality, Sportsman's does not maintain personal or usage information within or obtained from the AddShoppers' cookie with confidentiality at all—and certainly not at the same level as credit card information associated with a purchase, for instance.

In sum, while consent can sometimes be inferred from a privacy policy, not all privacy policies establish valid consent. Recently, the Ninth Circuit confirmed that a consent defense cannot bar claims when, as here, a privacy policy misleads a reasonable user about the true nature

of data disclosures. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024). Sportsman's has not come close to satisfying its burden to prove consent. *See id*. at 620.

### C.    Cordero adequately alleges Sportsman's installed a trap and trace device on its website in violation of CIPA.

Cordero adequately alleges Sportsman's installed "a trap and trace device without first obtaining a court order." Cal. Pen. Code § 638.51(a). The statute defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Pen. Code § 638.51(b). And because these devices include tracking software installed on a website or phone, Sportsman's use of AddShoppers tracking technology violates the statute. *Moody v. C2 Educ. Sys. Inc.*, 2024 WL 3561367, at *2 (C.D. Cal. July 25, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *see also Shah v. Fandom, Inc.*, --- F. Supp. 3d ---, 2024 WL 4539577, at * 2 (N.D. Cal. Oct. 21, 2024).

Yet, Sportsman's has two objections to applying the plain meaning of the statute to its conduct. Neither has merit.

*First*, Sportsman's argues the tracking software must satisfy a "unique 'fingerprinting' standard.'" Mot. at 13. But trap and trace devices are not so limited. Because the statute uses "expansive" language, the process which violates the statute can take many forms. *Greenley*, 684 F. Supp.3d at 1050. For example, trap and trace devices include a TikTok software development kit "embedded in [a third-party provider's] Website" when it "collects information from visitors" to that website. *Moody*, 2024 WL 3561367, at *3.

At any rate, Cordero satisfies even the heightened fingerprinting standard. In *Greenley*, the court described "fingerprinting" as "in essence" collecting sufficient data from different sources

that could be "de-anonymized" to "deliver 'targeted advertising'" and to "share this 'rich personal data simultaneously with untold numbers of third-party companies.'" 684 F. Supp.3d at 1035. It concluded that "[s]urely among [the processes covered within the definition of trap and trace device] is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Id*. at 1050. Here, Sportsman's installed tracking technology that works in the same way: When an internet user browses a retailers' website in AddShoppers' SafeOpt marketing program, "a third-party tracking cookie is created that includes a unique value AddShoppers associates with that user" and "AddShoppers [] associates that unique value with the personal information the user provided to [AddShoppers], which typically includes, at a minimum, full name, address, payment card information, and email address." Compl., ¶ 22. Plaintiff alleges that AddShoppers "collects data" from users and "matches that data with [AddShoppers'] database to uncover the visitors' identities." *Moody*, 2024 WL 3561367, at *1.

*Second*, Sportsman's asserts Cordero must plead "the exception to Cal. Penal Code § 638.51(b) did not apply" based on an unpublished California state trial court opinion. Mot. at 13 (citing *Garcia v. Asana*, *Inc.*, 2024 Cal. Super. LEXIS 32846 (Sup. Ct. Cal.)). Not so. California's state court pleading rules do not apply in federal court.[2] As a result, California federal courts have

---

[2] *Asana* applied a general California state court pleading rule that requires violations of California state statutes to be pleaded with particularity. That rule does not appear in CIPA (unlike some state laws that, for instance, prohibit class actions). There is no argument that it is substantive. Moreover, the California pleading rule is broader than the requirements of Federal Rule of Civil Procedure Rule 9(b) and is inconsistent with the notice pleading standards of Rule 8. "Where then, as here, a federal procedural rule governs the question at issue, that rule controls— 'notwithstanding' state law—so long as the federal rule is a valid exercise of authority given to the Supreme Court to enact federal rules of civil procedure pursuant to the Rules Enabling Act, 28 U.S.C. § 2072." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1163–64 (10th Cir. 2017). Defendants have not argued, and *Asana* does not support the construction, that pleading the exceptions to § 638.51(b) is a substantive state law requirement or that Rules 8 and 9(b) are not a valid exercise of the Supreme Court's authority under the Rules Enabling Act. Therefore, Plaintiffs should not have to plead the exceptions under Rules 8 or 9(b).

4864-1977-8550.v1

uniformly denied motions to dismiss this claim without requiring a plaintiff to plead the exceptions to § 638.51(b) did not apply.

Besides, Sportsman's conduct is not shielded by any of the statutory exceptions here. Sportsman's does not "operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51(b)(1). It is an online retailer. Sportsman's does not rely on the tracking device for any legitimate purpose. The device does not "protect the rights or property of the provider." It does not "protect users of the service from abuse of service or unlawful use of service." And it does not "record the fact that a wire or electronic communication was initiated or completed to protect the provider." Rather, Sportsman's installed a tracking device which is unnecessary for the operation of the website for exclusively financial reasons.

### D. The court should not stay the case based on cases against AddShoppers.

A stay is the rare exception to the ordinary course of litigation. *See Landis v. N. Am. Co*., 57 S. Ct. 163, 255 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). Sportsman's "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* In evaluating a stay request, courts typically consider whether the stay would simplify the issues before the court, the stage of the litigation, and a balancing of prejudice to the parties. *Menchacha-Estrada v. Synchrony Bank*, 2017 WL 4990561, at *1 (D. Utah Oct. 30, 2017).

Yet Sportsman's does not identify any factor it believes supports a stay here. Instead, it highlights five cases it claims involve similar legal issues or are against AddShoppers or other retailers based on similar tracking technologies. Mot. at 15. But none of these cases could have preclusive or binding effect on the issue or parties here. And Sportsman's does not even show

these decisions will even benefit it. Just the opposite. Sportsman's cites *McClung* which sustained the plaintiffs' CIPA claim against a retailer for precisely the same technology.

Notably, Sportsman's cites no case where a district court stayed litigation because a state trial or out-of-district federal court in a different case with different parties might, at some unspecified time, issue a decision on a legal issue that could theoretically be relevant. If parties could seek stays on such speculative grounds, a stay would be justified in nearly every federal case. In fact, Supreme Court precedent establishes that stays in favor of other pending litigation should be "rare." *Landis*, 57 S. Ct. at 255. Furthermore, this district has denied stays even when a pending Supreme Court case could have potentially clarified the legal framework in a way that might reduce a defendant's liability—circumstances far more compelling than those here. *See Fed. Trade Comm'n v. Zurixx, LLC*, 2020 WL 6898341, at *4 (D. Utah Nov. 24, 2020).

Sportsman's only cites one case in support of stay. But there, the court granted a stay because a decision in a parallel action before the same court directly threatened the court's own subject-matter jurisdiction, a fundamentally different context. *See Morrison v. YTB Int'l, Inc.*, 2010 WL 1931127 (S.D. Ill. May 13, 2010).

Sportsman's fails to establish a clear case of hardship, inequity, or prejudice warranting a stay. Its position is no different from that of any other federal court litigant hoping that case law will eventually develop in its favor. By contrast, granting a stay pending resolution of the five cases cited by Sportsman's—or others that could arise—would effectively delay this case indefinitely. *E.g.*, *Weatherspoon v. Miller*, 2011 WL 1485935, at *2 (D. Colo. Apr. 19, 2011) (rejecting *uncontested* indefinite stay; "This is particularly true in cases requesting indefinite stays, which could substantially delay the ultimate resolution of the case, with adverse consequences

18

such as a decrease in evidentiary quality and witness availability."). Accordingly, Cordero and the class he seeks to represent would experience a clear case of hardship and prejudice from this delay.

## V.        CONCLUSION

Sportsman's Motion should be rejected in its entirety. Cordero requests leave to amend to cure any defects the Court identifies.

DATED November 6, 2024.                        Respectfully submitted,

                                        */s/Brady L. Rasmussen*
                                        Brady L. Rasmussen
                                        PARSONS BEHLE & LATIMER

                                        Eric S. Dwoskin
                                        DWOSKIN WASDIN LLP
                                        (*pro hac vice*)

                                        Norman E. Siegel
                                        J. Austin Moore
                                        Kasey Youngentob
                                        STUEVE SIEGEL HANSON LLP
                                        (*pro hac vice* forthcoming)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of November 2024, I caused a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS** to be filed with the Court's CM/ECF system, which provided notice of such filing to all counsel of record.

/s/*Michelle Orton-Brown*
Legal Assist with Parsons Behle & Latimer

20