IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **MIGUEL CORDERO ,**<br><br>     **Plaintiff,**<br><br>vs.<br><br>**SPORTSMAN'S WAREHOUSE, INC.,** **and SPORTSMAN'S WAREHOUSE HOLDINGS, INC.,**<br><br>     **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-CV-575-DAK-CMR<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on Defendants Sportsman's Warehouse, Inc., and Sportsman's Warehouse Holdings, Inc.'s Motion to Dismiss Plaintiff's Complaint [ECF No. 24]. On January 16, 2025, the court held a hearing on the Motion to Dismiss. At the hearing, Plaintiff Miguel Cordero was represented by Eric S. Dwoskin, Brady L. Rasmussen, and Kasey Youngentob, and Defendants were represented by Jamie L. Filipovic and Kristin A. VanOrman. The court took the motion under advisement. After considering the parties' arguments and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

Defendants move to dismiss Plaintiff Miguel Cordero's Class Action Complaint under FRCP 12(b)(1) for lack of standing and FRCP 12(b)(6) for failure to state claims under the California Invasion of Privacy Act and California Trap and Trace Law. In the alternative, Defendants request that the court stay the matter, pending the outcome of rulings in similar cases addressing the same issues.

## BACKGROUND

Cordero, on behalf of himself and all others similarly situated, brought this action against Defendants Sportsman's Warehouse, Inc. and Sportsman's Warehouse Holding, Inc., who operate, control, and manage the website Sportsmans.com. Cordero claims that Defendants violated California privacy and disclosure of protected information laws by sharing the contents of consumers' communications with the web tracking company, AddShoppers.

Cordero alleges that AddShoppers unlawfully tracks individuals across the internet, collects their personal information without consent, and then uses that information to send direct marketing solicitations to the individual. For example, if a person creates an account to buy pet food on a retailer's website, and the retailer is part of the AddShoppers "Data Co-Op," AddShoppers captures the information provided to the retailer, tracks the person's web browsing across the internet, and then uses that information to provide targeted advertisements to the person on behalf of members of the Data Co-Op.

Cordero assets that while AddShoppers' terms and conditions reference being granted a license to collect personal information of its partner companies' customers, the reality is that the users themselves never authorized their data to be shared this way. Consumers allegedly have no idea that while buying a product, their information was transmitted to a company that will use the information as it chooses.

AddShoppers' co-founder, Chad Ledford, described the operation of the Data-Co-Op as providing AddShoppers with two kinds of data sources: "One is a blind Co-Op, which I would say half of our clients are participating in that, and the blind Co-Op is the brands submitting data into it in exchange for being able to use the data that comes out of it to activate the campaigns. . . . And then the other half comes from publisher relationships that we have where we license the data, and

again, we don't sell data, or we don't push data out of it so that users can still control all their data, but it gives us additional scale so that we can start to match who these people are."

Cordero argues that AddShoppers operates a "data lake" where it collects as much information relating to a user as possible from different sources, stores that information in a centralized location where it matches data points and creates detailed profiles on individuals, and then uses those profiles to send direct, targeted advertisements from Co-Op companies even when the user did not authorize it. Central to AddShoppers' data collection operation is its use of third-party tracking cookies. Cookies are small text files that are stored on a user's computer or mobile device by a website. Cookies are used to save information about the user's browsing activity, such as shopping cart contents and browsing history. A first-party cookie is created and stored by the website the user is visiting, also known as the host domain. Third-party cookies, by contrast, are those created by domains other than the one the user is visiting. These cookies are accessible on any website that loads the third-party server's code. Because they can be accessed by multiple domains, third-party cookies can be used to track a user's browsing activity across multiple websites.

Companies that join the Co-Op agree to install AddShoppers' code on their website. When an internet user creates an account or makes a purchase with the business, a third-party tracking cookie is created that includes a unique value that AddShoppers associates with that user. The cookie is put on the user's browser and automatically sends information to AddShoppers' "SafeOpt" domain. AddShoppers then associates that unique value with the personal information the user provided to the company, which typically includes name, address, payment card information, and email address. With the tracking cookie in the user's browser, AddShoppers can then monitor the user's browsing activity across the internet. If the user lands on another website in

AddShoppers' SafeOpt network, the cookie values sync and AddShoppers tracks the user's activity on the website. Because AddShoppers already associates personal information with the cookie value, it can directly advertise to the user even where the user leaves a website without affirmatively providing any personal information.

AddShoppers can then solicit a user in the form of a direct email from the retailer in its "SafeOpt" network that had the user on its site, imploring the user to return to the website to purchase a product they were looking at even though the user never gave their email address to that retailer or authorized such communications. AddShoppers receives a cut of all sales made via affiliate links in emails, texts, apps, and content.

Cordero claims that the consequences of this type of tracking are serious because SafeOpt's network of businesses includes companies that sell highly personal products, including feminine hygiene and men's health products. As a result, SafeOpt can reveal exceptionally private information about customers to anyone who shares a computer with that person. Cordero also alleges that AddShoppers' list of hundreds of millions of U.S. consumers was not gained through voluntary consent. Rather, shoppers become part of AddShoppers' SafeOpt network without signing up for the service. The consumer "joins" SafeOpt simply by making a purchase from a company participating in AddShoppers' Data Co-Op. The consumer's information is then traded without their knowledge and consent.

Cordero recently requested his data from AddShoppers, which shows that he had been tracked by at least a dozen companies for several years, including the exact dates and times he visited other websites that were part of the AddShoppers' network. One such website was Sportsmans.com, which captured information about Cordero's visit to its website on March 7, 2024. Although Cordero never provided personal information, including his email, to

4

Sportsman's, the company tracked his visit and sent information back to AddShoppers to be included in the Data Co-Op. Cordero alleges that he never agreed to the terms and conditions for AddShoppers or Sportsman's.

Cordero, a California resident, filed his Class Action Complaint on August 9, 2024, in this court because Defendant Sportsman's Warehouse, Inc. is a Utah corporation with its principal place of business in West Jordan, Utah. Cordero defines the prospective class members as "all California residents who had their personal information collected by AddShoppers and whose online activity was tracked by AddShoppers." Defendants responded to the Complaint by filing the present Motion to Dismiss.

## DISCUSSION

### Defendants' Motion to Dismiss

Defendants move to dismiss Cordero's Complaint under FRCP 12(b)(1) for lack of standing and FRCP 12(b)(6) for failure to state claims under the California Invasion of Privacy Act ("CIPA") and California Trap and Trace Law . In the alternative, Defendants request that the court stay the matter, pending the outcome of rulings in similar cases addressing the same issues.

1. **Standing**

Defendants argue that Cordero fails to establish Article III standing because he does not plead a concrete harm. To establish the "irreducible constitutional minimum" of standing under Article III, a plaintiff must allege facts that clearly show: (1) they suffered an injury in fact; (2) that is fairly traceable to defendant's conduct rather than a nonparty third party; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants argue that Cordero fails to establish a concrete injury because he does not

demonstrate how a cognizable harm occurred or how Sportsman's violated any traditionally recognized right. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). To establish an injury in fact, plaintiffs must demonstrate that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). A plaintiff does not automatically satisfy the injury requirement simply because a statute grants a right and purports to authorize the person to sue to vindicate that right because "an injury in law is not an injury in fact." *TransUnion LLC*, 594 U.S. at 440. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*

Defendants point out that Cordero does not allege facts demonstrating how the alleged collection of information about the last time he visited Sportsman's website caused harm. Cordero does not allege that Sportsman's obtained any specific personal information, such as his name, address, or credit card information. Instead, he claims that the mere capturing of when he last visited Defendants' website amounts to a collection of personal information because a third-party, AddShoppers, would know that he had been on Sportsman's website and could obtain information of what products he viewed.

California statute protects and defines personal information ("PPI") as "any information . . . that identifies or describes an individual, including, but not limited to, the individual's name, social security number, physical description, home address, home telephone number, education, financial matters, and medical or employment history." Cal. Civ. Code § 1798.3(a). A time stamp stating "last visit: '2024-03-07T16:47:18, 672000+00:00'" does not rise to the standard of being able to identify or describe Cordero. Cordero alleges that he never provided personal information, including his email, to Sportsman's. Therefore, there is no allegation that Sportsman's collected

personal information that was never provided to them.

Cordero, however, alleges that the class members are harmed every time their personal information is used or shared in the AddShopper's network in a manner to which they did not consent. However, Cordero's allegations are fatally flawed because he makes no claims as to what personal information, as defined by the statute, was shared. The timestamp of his last visit to a website is not a cognizable harm. The Complaint fails to allege how this would sufficiently rise to the level of any traditional recognized right as it is not legally protected personal information. *See Lightoller v. JetBlue Airways Corp.*, No. 23-cv-361-H-KSC, 2023 U.S. Dist. LEXIS 102158, at *7-9 (S.D. Cal. June 12, 2023) (unpublished) (dismissing CIPA claim for failing to allege disclosure of personal information); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-1456-SB-SP, 2023 U.S. Dist. LEXIS 61276, at *10 (C.D. Cal. Apr. 5, 2023) (unpublished) (dismissing CIPA claims for lack of standing for failure to allege concrete injury).

Numerous courts have examined the use of code on consumer websites and dismissed claims for lack of standing when the plaintiff failed to allege that tracking website interactions resulted in concrete harm. To satisfy the injury requirement of Article III, plaintiffs must plead facts that show a defendant's interception of their information constitutes "an invasion of privacy interests that have been historically protected." *Popa v. PSP Grp., LLC*, No. C23-0294JLR, 2023 U.S. Dist. LEXIS 191053, at *7-8 (W.D. Wash. Oct. 24, 2023); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 64-65 (W.D. Pa. 2023); *Adams v. PSP Grp., LLC*, 691 F. Supp. 3d 1031, 1041 (E.D. Mo. 2023); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023).

When a plaintiff has not alleged an invasion of a protectable privacy interest, courts have held that the plaintiff failed to plead injury-in-fact and consequently failed to establish Article III standing. *Id.* In this case, Cordero does not present any factual information that his personal

information is implicated by AddShoppers capturing the time that he visited Sportsman's website. He did not create an account or make a purchase. He did not provide Defendants with his name, address, email, or payment card information. Cordero claims that the mere capture of when he last visited the website amounts to a collection of personal information, but the court in *TransUnion* explained that concrete harm exists when the alleged injury bears a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "disclosure of private information" and "intrusion upon seclusion." *TransUnion*, 594 U.S. at 424-25.

Citing the *TransUnion* court, the court in *Cook v. GameStop, Inc.*, examined whether the information the defendant allegedly intercepted was the kind of information that "amounts to an invasion of privacy interests that have been historically protected." 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023). The *Cook* court went on to explain that the tort of "public disclosure of private information" requires, obviously, "private facts" or information that the plaintiff does not leave "open to the public eye." *Id.* Likewise, intrusion upon seclusion requires a plaintiff to establish the defendant "intentionally intruded 'upon the solitude or seclusion of another or his private affairs or concerns' and that 'intrusion would be highly offensive to a reasonable person.'" *Id.* The *Cook* court explained that the requirement of private facts or private affairs in these torts confirms that the nature of the information is paramount. *Id.* "Eavesdropping on communications that do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a concrete injury." *Id.* Because the plaintiff "did not enter any personally identifying information at any point during her interaction" with the defendant's website, the court found that she failed to allege a concrete harm and lacked Article III standing. *Id.*

Similarly, in this case, Cordero makes no allegation that any phone number, names,

addresses, email, or personal information was captured by Defendants' website. Instead, the only information Cordero alleges was captured is a time stamp stating, "last visit: 2024-03-07T16:47:18. 672000+00:00." This information does not constitute personal information that can identify or describe an individual. Cordero argues that receiving emails connected to his product preferences could be an invasion of his privacy on a jointly owned computer. But "[product preference information is not personal information." *Id.* at 66. Like in Cook, Cordero admits that he never provided personal information to Sportsmans.com.

Cordero primarily relies on *In re Facebook, Inc., Internet Tracking Litigation*, as support for the contention that there is standing to pursue these claims. 856 F.3d 589 (9th Cir. 2020). But that case pre-dates *TransUnion* and its explanation of whether a plaintiff has adequately alleged an injury-in-fact resulting from a statutory violation. The plaintiffs in *In re Facebook* claimed that Facebook captured information about their browsing activity even after logging out and used that information to create personally identifiable profiles that described the plaintiffs and disclosed "likes, dislikes, interests, and habits over a significant amount of time." 956 F.3d at 598-99. The court held that the plaintiffs sufficiently alleged that Facebook's practices would cause harm or a material risk of harm to their interest in controlling their personal information, thereby alleging an invasion of a historically recognized right to privacy. *Id.* at 599. Therefore, the court then concluded that the plaintiffs had standing to pursue their claims. *Id.*

In contrast to *In re Facebook*, Cordero does not allege that he entered any personally identifiable information on Defendants' website, that Defendants' captured such information, or that Defendants could connect the information AddShoppers captured to his identity. Cordero submitted supplemental authority from *Lineberry v. AddShopper, Inc.*, 23-cv-01996-VC, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025), but that court stated that the complaint created a reasonable

9

inference that the plaintiffs purchased products from the retailers. *McClung v. AddShopper, Inc.*, 23-cv-01996-VC, 2024 WL 189006, *2 (N.D. Cal. Jan. 17, 2024). Both of the decisions in that case are difficult to apply to another case because the court provides few facts and specifically states that it assumes the reader is familiar with the facts. In this case, Cordero specifically alleged that he did not purchase a product from Sportsman's. The only information obtained in this case is a timestamp of his last visit to Sportsmans.com and that AddShoppers may have been able to target advertising to him based on that visit. This case is more like Defendants' supplemental authority in *Ingrao v. AddShoppers, Inc., et al.,* 24-1022, 2024 WL 4892514 (Nov. 25, 2024), in which the court provided a more thorough discussion of the standing issue and found no Article III standing. *Id.* at *8; *see also In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 351 (E.D. Pa. 2023) ("[B]rowsing activity is not sufficiently private to establish concrete harm"); *Cook*, 689 F. Supp. 3d at 66 (internet browsing activity not personal information to support Article III standing because "[p]roduct preference information is not personal information"); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049-50 (N.D. Cal. 2022) (disclosure of "basic contact information, including one's email address" is inadequate to establish Article III standing). Because Cordero has not alleged that Defendants' conduct invaded any historically protected privacy interests recognized as a basis for a lawsuit in American courts, he has not sufficiently alleged an injury that could establish standing under Article III.

      Cordero also fails to establish how his alleged injury is fairly traceable to Defendants. He admits that he did not provide Sportsmans.com with personal information and then alleges that Defendants shared his personal information. Sharing the last time someone visited a website is not statutorily protected in California as protected personal information. If Cordero's injury is the sharing of PPI, it cannot be traced to Sportsman's, who never received PPI from Cordero.

Therefore, the court concludes that Cordero has also not established that his alleged injury is fairly traceable to Defendants. Accordingly, the court dismisses Cordero's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.[1]

## CONCLUSION

Based on the above reasoning, Defendants Sportsman's Warehouse, Inc., and Sportsman's Warehouse Holdings, Inc.'s Motion to Dismiss Plaintiff's Complaint [ECF No. 24] is GRANTED.

DATED this 15th day of April 2025.

BY THE COURT:

_____
DALE A. KIMBALL
UNITED STATES DISTRICT JUDGE

---

[1] Because the court has found a lack of standing, it will not address the motion to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).